**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| GRAIN PROCESSING CORPORATION, | : | |
| | : | Case No. 09-CV-1163 |
| Plaintiff, | : | |
| | : | Judge Watson |
| v. | : | |
| | : | Magistrate Judge King |
| GREIF PACKAGING LLC, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM IN OPPOSITION OF GREIF PACKAGING LLC
TO EXCLUDE EXPERT RANDALL MEIROWITZ**

**I.     INTRODUCTION**

Counterclaim Defendant Grain Processing Corporation's ("GPC") Motion to Exclude Defendant's Tendered Expert Randy E. Meirowitz should be denied. GPC's motion is nothing more than a Hail Mary attempt to exclude a witness damaging to its defense. As set forth below, not only is Dr. Meirowitz qualified to offer opinion testimony in this case, but his opinions are based on well-established principles of adhesive and surface materials chemistry and supported by the evidence in this case. For the reasons set forth below, GPC's motion should be denied.

**II.     LAW AND ARGUMENT**

   **A.     Standard For Expert Testimony.**

According to Rule 702 of the Federal Rules of Evidence:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"[R]ejection of expert testimony is the exception, rather than the rule…." *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 530 (6th Cir. 2008) (internal quotations and citations omitted).

### B. Dr. Meirowitz Is Qualified To Opine Regarding Bonding Characteristics Of Corn Starch.

In a nutshell, GPC argues that Dr. Meirowitz is not qualified to render an opinion in this matter because he is just a chemist. GPC's argument is without merit; this case boils down to chemistry. As explained in detail in Dr. Meirowitz's Rule 26(a)(2) disclosure, the very fact that corn starch can be used for adhesive in the corrugating industry is due to the chemical properties and interactions of starch and paper. (Doc.# 54-10 at Exhibit A p. 7 -13.) The chemical interactions that form corrugating bonds are not due to some unknown natural phenomena, rather, the factors that influence adhesion in the corrugating industry "have been studied and described" through chemistry. (*Id.* at Exhibit A, p. 7.) Indeed, in connection with his work in this case, Dr. Meirowitz relied upon more than six different studies dealing directly with the adhesion of corrugated board. (*Id.* at Exhibit A, p. 20, items 2-8.)

Moreover, Dr. Meirowitz is not just a chemist. He is a surface and materials scientist with more than twenty years of experience in polymer chemistry/surface science phenomena, including the area of adhesion. (*Id.* at Exhibit A, p. 2.) As Dr. Meirowitz testified during deposition, he has served as an expert in at least four previous cases involving adhesive failures. (Meirowitz Dep. at 8-9.) In addition, he has years of experience in the paper industry, including both corrugating and the study of corn starch. (Meirowitz Dep. at 17.) Dr. Meirowitz was active in the Technical Association of Pulp and Paper Industry ("TAPPI") as well as the Institute of Paper Chemistry (*Id.* at 18.) If Dr. Meirowitz is not qualified by reason of "knowledge, skill, expertise, training or education" to testify regarding the cause of Greif's delamination issues, who in the world would be?

### C. Dr. Meirowitz Should Not Be Excluded Because He Has Offered An Opinion In Connection With Litigation.

GPC next argues that Dr. Meirowitz's opinion should be excluded because it was "created for the purpose of litigation." One wonders under what circumstances retained experts provide opinions that are not created for purposes of litigation. Yet, under GPC's logic, no expert could ever offer an opinion for litigation. Tellingly, the cases cited by GPC do not stand for this proposition. *See, e.g., Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398 (6th Cir. 2006). Rather, as in *Mike's Train House*, the Sixth Circuit has held that where opinions are derived from entirely new methodologies created for litigation, the trial court should be suspicious of the expert's credibility. *Id.* at 408 ("We have been suspicious of methodologies created for the purpose of litigation, because expert witnesses are not necessarily always unbiased scientists.") (internal quotation omitted). The circumstances at issue in *Mike's Train House* are a far cry from the those at issue here. Dr. Meirowitz did not invent the chemistry at issue in this case and GPC fails to cite this Court to any evidence or testimony – because there is no such evidence or testimony – that Dr. Meirowitz's opinions are based on methodology he created solely for this litigation. Accordingly, this Court should reject GPC's attempts to exclude Dr. Meirowitz simply because he was asked to formulate an opinion for purposes of litigation.

### D. Dr. Meirowitz's Opinions Are Not Based On Speculation.

GPC next contends that Dr. Meirowitz's opinions are based upon "unsupported speculation." GPC's principal argument in support of this claim is that Dr. Meirowitz considered testimony and evidence that GPC had received an unprecedented number of complaints similar to Greif's during the same time period. GPC contends that allowing Dr. Meirowitz to rely upon such complaints would require a trial within a trial. GPC also argues that there is no evidence

that these other corrugators who complained used the same machinery or processes as Greif to produce corrugated board.  However, the fact that GPC received so many complaints during this time period is certainly probative evidence that GPC was experiencing a quality control problem during this time period.  Moreover, Dr. Meirowitz reviewed the testimony of GPC's quality control personnel, who in many cases, did not understand how to conduct GPC's tests properly, were only temporary employees or had no idea how borderline starch would affect the corrugating process.

In addition, GPC's argument ignores the fact that Dr. Meirowitz reviewed evidence and documents related to the testing and failure mode analysis done by both by Greif and GPC in the course of investigating delamination issues at Greif's plant and the corrugating plant across the street from Grief.  Based on all of the available evidence, and his experience and expertise, Dr. Meirowitz concluded that GPC's starch demonstrated signs of commercially unacceptable caustic sensitivity which resulted in Greif's delamination problems.  This is not speculation, this is his opinion.  If GPC has issues with Dr. Meirowitz's opinion, it should be tested under the crucible of cross examination, not rejected outright based on its unsupported assertions that it is inadmissible in toto.

   **E.** **GPC's Attempts To Blame Dr. Meirowitz For Failing To Test Corn Starch It Failed To Preserve Should Be Rejected.**

GPC next argues that Dr. Meirowitz's opinions must be excluded because he "failed" to conduct testing on GPC's defective starch or on the delaminated corrugated board.  Dr Meirowitz could not conduct such testing because no valid samples of GPC's starch was retained.  GPC did not maintain production samples for this starch, despite the fact that it ordinarily did so.  Nor did GPC properly maintain starch that had been returned from Greif and other corrugators who had complained of defective starch.  Instead, nearly six months after GPC

4

informed Greif that "[n]o samples were retained", a GPC technician found a cardboard box of starch stored in ziplock baggies in an abandoned office that purported to come from Greif. (*See* Plaintiff's Responses to Defendant's First Request for Production at No. 11, attached hereto as Exhibit A; Hitchcock Dep. at 121-122.) Given the custody, authenticity and storage issues associated with two-year olds starch, it could not be used for testing. Greif should not be prejudiced by GPC's effective spoliation of evidence.

### F. Contrary To GPC's Contentions, Dr. Meirowitz Did Consider Other Possible Causes Of Greif's Delamination Issues.

GPC next argues that Dr. Meirowitz's opinions should be excluded because he allegedly failed to consider other possible causes of the delamination problems experienced by Grief during late 2008 and early 2009. Yet, as GPC points out, Dr. Meirowitz acknowledged that there are other possible causes for delamination other than bad pearl starch. (Doc. # 70 at p. 13 citing Meirowitz Dep. at 14.) GPC further acknowledges that Dr. Meirowitz reviewed the materials and depositions obtained during discovery, including the investigation done by both Grief and GPC to determine the root cause of the bonding issues, and with this information, concluded that caustically sensitive pearl starch was the cause of Greif's delamination issues. (*Id.* at p. 13.) Nevertheless, GPC points to a single third party document (consisting of pure hearsay) which, according to GPC, is proof that delamination was caused by a faulty belt on the corrugating machine. (Doc. # 70 at 13.) Yet, there is no evidence whatsoever that Dr. Meirowitz failed to consider this or other possible causes for the delamination issues experienced by Greif. Dr. Meirowitz was not asked during deposition whether he considered a faulty belt as a potential cause of the delamination or whether he considered any other cause. (*See generally* Meirowitz Dep.). Simply because GPC's counsel failed to ask the correct questions during deposition is not evidence t hat Dr. Meirowitz did not consider and eliminate other causes of delamination.

5

### III. CONCLUSION

For the foregoing reasons, GPC's Motion to Exclude Defendant's Tendered Expert should be denied.

Respectfully submitted,

/s Michael J. Canter
Michael J. Canter  (0031015)
E: mjcanter@vorys.com
John M. Kuhl  (0080966)
E: jmkuhl@vorys.com
VORYS SATER SEYMOUR & PEASE LLP
52 East Gay Street
Columbus, OH  43215
T: (614) 464-6400
*Attorneys for Defendant Counterclaimant*

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of July, 2013, a copy of the foregoing was electronically filed and delivered to counsel for Plaintiff, William A. Nolan and Amy Ruth Ita, via the Court's CM/ECF system.

/s John M. Kuhl  
John M. Kuhl